BLAKE, FOSTER *and* LUNN, *v.* WILLIAMS, *Admr. of* DRAPER, LUNN *and* COLE.

A bill for an account may be filed upon the equity side of the court, by the assignee of a second mortgage, against the holder of the first, and also against the mortgagor to foreclose the right to redeem.

| | |
|---|---|
| 39 | |
| 64 | 107 |

| | |
|---|---|
| 36 | 39 |
| 67 | 492 |
| 68 | 485 |

The transfer of notes secured by mortgage, upon good consideration, and the delivery of the mortgage, is a valid assignment of the mortgage.

A quitclaim deed by a mortgagor to the holder of a first mortgage, does not cut off a second mortgage, previously executed.

Where a party executed two mortgages of real estate to the same person, and they were subsequently assigned to different persons, upon a bill for an account by the holders of the second mortgage, upon good consideration, against the holders of the first, — *held*, that it was not competent for the defendants to show that the second mortgage was made with a view to defraud third persons; *held, also*, that, in a bill to foreclose the second mortgage, it was not competent for the mortgagor, or those in privity with him, not being creditors, to show such contemplated fraud to bar a foreclosure.

IN EQUITY. The facts of this case may be stated as follows: On the 14th day of January, 1842, one Lewis H. Masseure was the owner of one lot of land and part of another, situated in Stark, in this county, and on that day conveyed the same to one David Learney. On the same day Learney mortgaged the premises to Masseure, to secure the payment of two notes of that date, for $100 each; and these notes remain unpaid.

In April, 1848, this mortgage and the two notes were assigned and delivered to one William Draper. In 1850 Draper went to Boston, and resided in the family of one Chubbuck, who let Draper have money, and took these notes as security. While there, Draper was taken sick, and finally died; and when sick, and in prospect of death, he gave the notes to Chubbuck in full for the money he had received and for the attention and nursing rendered him in his sickness. Mr. Williams, one of the defendants, is administrator of Draper's estate.

After the death of Draper, Chubbuck went to California, and left the notes with his wife in Boston; and she, on the 22d day of July, 1853, professing to act as the attorney of her husband, but without any written power-of-attorney, conveyed the premises to Silas Lunn and Cole, the two other defendants. She also delivered the notes to Lunn and Cole, and they paid her $250. Chubbuck had, by letter, authorized his wife to sell and dispose of the notes.

On the 13th day of September, 1853, Learney gave to Silas Lunn a quitclaim deed of these lots, and the defendants, Lunn and Cole, have taken possession of the same.

Blake, Foster and Lunn *v.* Williams, Lunn and Cole.

On the 14th day of January, 1842, being the day on which Masseure first conveyed the premises to Learney, and on which Learney mortgaged them to Masseure, Learney made another mortgage to Masseure, subject to the former one, to secure the payment of four notes of that date, amounting to the sum of $350. This mortgage was, on the same day, assigned to one Washburn, and the notes transferred to him. On the 22d day of March, 1842, it was assigned, and the notes transferred by Washburn to one Kidder; and on the 15th of April, 1854, it was assigned, with the notes, to the complainant Blake. On the 12th day of June, 1854, Blake quitclaimed to Foster and Joshua Lunn, the other complainants, two undivided thirds of his interest in the premises, and in the mortgage and notes.

The bill prays for an account of the amount due upon the first mortgage, and for a decree to whom the first shall be paid by the complainants. It also prays for an account to be taken of the amount due upon the notes and mortgage held by the complainants, and for a decree that the defendant, Silas Lunn, pay the same, and also all such sums as the complainants may be ordered to pay to redeem the first mortgage; or, in default thereof, that Lunn, and all persons claiming under him, may be barred and foreclosed from all equity of redemption or claim to. the premises.

In addition to the foregoing facts, it is contended by the defendants that the second mortgage was made without consideration, and that the transfers to Washburn and Kidder were without consideration, and were made with a view to defraud some one; and that the complainants knew of these facts when they bought it. And the parties have agreed that if these are matters competent and material to be considered in this proceeding between these parties, then testimony shall be taken in regard to them before the final disposition of the bill.

*Heywood*, and *Burns & Fletcher*, for the complainants.

*J. W. & G. C. Williams*, for the defendants.

EASTMAN, J. .By the agreement between the parties, it becomes necessary to determine in the first place whether the defendants are in a position to show that the mortgage held by the complainants was without consideration, and made with a view of perpetrating some fraud.

It is not contended that any fraud has been practised between any of the parties in this suit upon each other. It is admitted that the first mortgage is good, and that no one of the complainants or defendants has been defrauded by the making or transfer of the second. It is to be observed, also, that here is no complaint made by creditors or third persons. Silas Lunn, who took the quitclaim deed of Learney in 1853, is privy with Learney, and bound by the covenants in the mortgages, which were both made and recorded in 1842.

The position, then, is this, — that parties to a mortgage, made for the purpose of defrauding third persons, may, as between themselves, show the intended fraud, to make void the mortgage. It is manifest that such a position cannot be maintained. The parties should be left where they have left themselves, and the law will aid neither of them. When creditors or innocent persons shall complain, the consideration may then be inquired into.

The transfer of the notes by Draper to Chubbuck was good. It is unnecessary to consider whether it was a *donatio causa mortis*, because there was a good consideration for the transfer — the money let and the service rendered. Mr. Williams, as administrator, therefore, has no legal claim upon the notes.

The transfer, too, by Mrs. Chubbuck to Lunn and Cole was also good. Her deed was invalid, because she had no power to make it; but she had due authority to sell the notes, and the mortgage passed as incident to the notes. *Southerin* v. *Mendum*, 5 N. H. 420 ; *Rigney* v. *Lovejoy*, 13 N. H. 247 ; *Wilson* v. *Kimball*, 7 Foster 300.

The defendants, Lunn and Cole, holding these notes and mortgage, should give an account of the amount due to the subsequent mortgagees, or their assigns, that the same may be paid. They are as much bound to give an account as the original mort-

gagee. Rev. Stat., ch. 131, sec. 16. And Silas Lunn, who holds the right of Learney to redeem, should pay the second mortgage, or the right to redeem should be foreclosed. This is the only way in which equity and right can be done between the parties.

The quitclaim from Learney to Lunn, in 1853, could not cut off the second mortgage. It could not operate as a foreclosure of the first mortgage. Both mortgages were recorded in 1842, eleven years before the quitclaim to Lunn. The quitclaim simply placed Lunn in Learney's position.

We think that the prayer of the bill should be granted, and a decree may be drawn in accordance with these views.